Good morning and may it please the court, Whitney's attorney Eva Jellison. I just want to hit the highlights of the facts and then as a road map I intend to discuss the question of de novo review, the Edwards v. Arizona violation, and then if we have time get to the Doyle v. Ohio violation within the framework of an ineffective assistance claim. The facts very briefly are just these. Brian Johnston shot his friend David Sullivan six times and just a few hours later he was, in quick succession, civilly committed as mentally ill and posing a risk of serious harm. He's then placed under arrest for murder. He's then examined at the jail and then he's committed to Bridgewater State Hospital as a mentally ill prisoner. All along the way he asked for his counsel numerous times and then at trial the jury received substantial evidence of Johnston's statements to Bridgewater and jail staff after he made those invocations. And so the question is, as to de novo review, under Johnston v. Williams, the Supreme Court's case, whether this court reviews under the ADPA unreasonable application standard or whether this court should review Johnston's constitutional claims de novo. And the question is really whether the SJC decided our Edwards suppression claim or did it not. And the claim was that counsel should have moved to suppress the statements to jail and Bridgewater staff because he had invoked his right to counsel. And so just as context, four years before I filed the brief in this case in the SJC, the Supreme Court in 2009 had done away with the Sixth Amendment bar on post-detachment interrogation of defendants. So it's not surprising then that I raised a Fifth Amendment Edwards base claim and not a Sixth Amendment claim. That claim was precluded. It was done. Suppose at trial that counsel had moved to strike or preclude or suppress the statements made to the psychiatrist. Would that have been successful given that he was pleading in insanity defense at trial? I thought that in that situation he would lose, in which case we don't need to go through any of the other issues. That's not correct and here's why. The statements that need to go out are the ones where he's speaking to any number of jail or Bridgewater staff, not the formalized interviews. The Commonwealth had three formal interviews that they were entitled to use. They got a reciprocal opportunity, which is what Buchanan and Estelle versus Smith and Teaver, they all say the Commonwealth gets a reciprocal opportunity. And it also complies, those interviews comply with the Fifth Amendment requirement in MNIC, which is after you've invoked your right to counsel, further questioning has to take place in the presence of counsel. Weren't all the statements with mental health care providers? Yes, they were, but those weren't part of the... And weren't they all offered solely for the purpose of, to the extent they bore on the issue of insanity? The difference is, and this is quite important, it's in Estelle and it's in Buchanan, is that those statements then can come in in the 18A hearing. There's no Fifth Amendment bar for them to come into the 18A hearing, but they cannot be used to make out a case for guilt. But neither Estelle nor Buchanan says that. In fact, Buchanan stresses, and so does Estelle, that they're not talking about cases in which someone pleads insanity. But they talk, because neither of those defendants pleaded insanity. Those cases talk about when a defendant, for example, in Estelle versus Smith, it's a future dangerousness question. And the Supreme Court says they have to make their case for future dangerousness in some other way. They can't do it this way, because there's a Miranda violation. Do you have any cases other than Estelle and Buchanan that you would say would bear favorably on a motion to suppress the statements in this, had such a motion been made at trial? Well, I think the most important case, and I'm sorry for being obvious, is Minnick. Because Minnick says, once you've invoked your right to counsel, we don't care who it is. No, but the issue here isn't the basic Fifth Amendment right. The issue is whether that right still attaches to statements made in this context, where someone is pleading insanity, and the statements all go to the mental competence. Right. So the... I don't see where Estelle and Buchanan gets you there. That doesn't mean you can't get there. But I'm simply asking, is there any other case that hones in on that issue? Well, I think it's, respectfully, it's fairly clear to me that Estelle says that interrogation, Estelle versus Smith says that interrogation includes state doctors. It's all about the context. And so the context is here. There's an invocation, there's custody, there's interrogation. The context is, according to Innis, is whether it's objectively likely to elicit an incriminating response from a government actor. These are government actors. It's clear that mental health would play a central role in Johnston's case. He's subjected to a constant stream of questioning in the immediate aftermath of his arrest. The government wants to say the intent of the questioners is what governs. Innis says that's not it. It's an objective test. They knew he was charged with murder. They knew he was at Bridgewater immediately after his arrest. And Judge Tarweya, you said... I was going to ask you a question. Go ahead. There's a case called Reyes that you decided from 2000 in which you wrote that even routine booking questions can be incriminating depending on the context. And that's what I'm saying here. The context is everyone knows that Bridgewater records are going to be seized on by the Commonwealth and those doctors and those records and those mental health workers are going to be called on to testify at trial. How do they know that? How does Bridgewater staff know that? Because they do it all the time and they did it in this case. Your defense was that he was insane. Yes. And the examination at Bridgewater was to determine his mental capacity. Am I correct? It was to determine whether he was a mentally ill prisoner not capable of serving out his detention in a regular facility. Okay. Am I correct that everything he said regarding that examination was admissible at his criminal trial? The formal examination, yes. So everything except the fact that he asked for a lawyer was admissible? No. No? My position is any statements that he made in his interviews with Dr. Peebles at Bridgewater and the name of the doctor at the jail is escaping me, but those formal interviews, that comes in. There's lamp warnings. There's counsel present. Everything else that's in the jail, he's locked down in an isolation cell in a paper johnny. He can't go anywhere. I want my lawyer. How you doing? Do you know where you are? And this goes on and on and everything that he says comes in and is used against him to prove that he's rational when all he wants to do is talk to his lawyer and now all of a sudden that's rational. It's unacceptable. You can't place this defendant who is overwhelmed. He's just been medically sedated and now he's being subjected to a torrent of questioning. It's inherently unfair, but I want to say. Who puts this evidence in at the criminal trial? That's why it's an ineffective assistance claim. So when you say he's subjected to this barrage, his counsel decides that it's in his best interest to admit this evidence. So he makes no use of the day-to-day questioning at trial. He only uses the interviews with the doctors. But he puts the whole thing in. Right, because he thought it came in. And that is an unreasonable strategy because he's putting in this damaging evidence that the government used and he's not making use of it himself. At best, all he's doing is saying to the jury. I thought that counsel said that he put it all in because he thought it would do more harm to try to shield or redact certain parts of it. But the jury would be left wondering what else was said or how else the statements to the doctors could be explained. Well, so we're bleeding into the second issue, but I think the answer is the same. That we have to accept that statement of strategy. That is not what counsel said, but that is the finding from the trial court judge on the motion for a new trial and the SJC accepted it. So we'll go with that. That's unreasonable because there was no strategy of issuing redactions. He talks about redacting the Bridgewater records in front of the jury. He draws the jurors' attention to it. They know that there are redactions going on. All he had to do was do what he wanted to do with this defense. Keep out the records, talk to the doctors, call the civilian witnesses, and he's got his defense without all this harm that's coming in. Let me, if I could, if we're done with that question. One of your basic arguments is that we should review this issue de novo because the SJC affirmatively explained in its opinion, the way you read it, that they didn't understand you were making that argument. Did you file a motion for reconsideration in this context? I think not. I don't see one in the record. In this context where the claim is that the SJC affirmatively did not understand an argument was being made, does exhaustion require a motion to reconsider? No, because I was, I could not have been clearer in my reply brief. SJC, please be careful, the government is trying to confuse you. They're saying it's a Sixth Amendment claim, I'm telling you it's a Fifth Amendment claim. So you think they understood your argument? I did everything I had to do to exhaust the claim. Isn't your premise that you want us to accept is that they missed the argument entirely? I don't know what happened. Well, if they didn't miss it, you lose, right? Because then we presume they denied it. If, I'm sorry, if they... If they appreciated the fact that you were making the argument that you want us to adopt, then the case law tells us we have to presume that they denied it, even if they were silent. So, I'm not sure that I would lose, but it's a 2254D review. Right, that's what I meant, you lose on the standard review. They didn't miss it, but what we have here in context is they're saying it's important to understand the defendant's not raising a Fifth Amendment claim, it's a Sixth Amendment claim, and then they go on to discuss the Sixth Amendment without ever citing Montego. Moreover, if you compare my brief to their decision, they specifically address every other claim I make in that rather lengthy brief. This is the only one that's disconnected to the brief. They follow along precisely what I did. I don't know what happened, Your Honor, but I think I've rebutted the presumption. So, are you all right if we conclude that what happened is that they did understand your argument and they just, without saying anything, denied it? No. Okay, so you want us to accept the proposition that they didn't even understand you were making this argument? No, I think we don't need to characterize what was going on in their heads, so to speak. All we need to do is to say it's clear they didn't decide it. They may have seen the claim, but they didn't decide it. And there's no subsilentio here because of the context, because they specifically characterize the argument, and then they specifically address all the other claims that I made. But normally a claim that's not decided by the state's highest court, we presume that they did deny it subsilentio. You want us to assume that they missed it, despite what you characterize as the painstaking clarity of your reply brief, that they missed it. So, there's two responses to that. The first response is that I don't think it's correct to assume a subsilentio here in terms of a de novo review because if you read Johnson v. Williams, they say even a situation where there's simply a mention in a footnote but no real discussion of the claim, that may be enough to get you de novo review. Right. So, here, it's far beyond that. But beyond that, I think there's no reasonable inference of a subsilentio decision of the claim here because if you look at the 33E, the SJC's plenary review at the end of the decision, all they do is talk about whether they should reduce the verdict. It's a tragic case, but yes, this was for the jury. They only talk about the degree of guilt and so forth. They don't say anything like, having considered the other claims, we deny them without further discussion. That would be the place to do it, and they often do in a 33E. So, I don't think that there's any reasonable inference that the SJC subsilentio considered and denied.  Thank you. Good morning, Your Honor. May it please the Court. Jennifer Zolosky representing Lisa Mitchell, a respondent in this case. Help us out on this standard of review question, can you? Certainly, Your Honor. Of course. We would argue that the input deference does apply in this case and that this Court should find that the SJC, although not explicitly in their decision, rejected the Fifth Amendment issues that were raised by the petitioner. What do you do with the statement in the SJC opinion that indicates they were under the impression that the petitioner wasn't making a Fifth Amendment claim? Well, much like the petitioner, Your Honor, we can't get in the heads of the SJC judges in this case. I know, but I'm asking you, what reasonable interpretation can you put on that statement, other than that they thought the petitioner was not making the Fifth Amendment claim? I'm not sure that they plainly say that they don't think he was making that. They certainly address several issues around what's going on here. They don't say the Fifth Amendment. They, in detail, talk about that the issue before them is whether or not these statements should come in. So, I think immediately the Fifth Amendment has been brought to their attention. They also talk about the right to remain silent, and they claim that that's not what was going on here. Again, that's a Fifth Amendment issue. So, the Fifth Amendment was before them. And I think if you take into consideration this Court's recent decision last week in Jackson v. Marshall, where this Court held that a state court does not fail to adjudicate a claim on the merits if it assesses the claim but applies a legal standard other than the standard the petitioner suggests, that's similar to what's happening in this case. I don't think it's a case in which the SJC completely missed it. I don't think it's a case in which the SJC misunderstood it. I think they chose to look at it through the Sixth Amendment because this is a post-arraignment interview that was happening. And if you look at the Fifth Amendment cases that the petitioner cites both in his brief and here, none of those, Estelle or Edwards or Minnick, apply to the situation that's happening in this case. This is not a law enforcement interrogation. This is not a post-arrest type situation. This is somebody who had already been arrested and arraigned and was being held. And while he was being held in the House of Corrections, had exhibited some behavior that was concerning. And so then the House of Corrections institutes the Section 18 proceedings to see whether or not the petitioner should be hospitalized for a mental illness. It's a very different situation factually than what happens in all of those other cases. So I think it's reasonable, when you look at the overall decision, that the SJC understood what was going on, but they addressed it in a different way. But that alone, even though they don't mention the Fifth Amendment explicitly, that doesn't help the petitioner meet his burden that the presumption is it was adjudicated on the merits. So we would certainly ask that you address this case under the inference. Would you agree that suppose the law were very clear that had trial counsel moved to exclude this testimony, that it would have been excluded as violent of the Fifth Amendment. If that were correct, is there any plausible, rational argument why trial counsel would not have pursued such a motion? Well, it's not correct, but I think that part of the reason in this case, it is outlined certainly through the record and certainly as you go through the trial, this was his strategy. His strategy was to take on... As I understand it, his strategy seems to be that he assumed the stuff was coming in, the prosecution was going to put it in, so therefore he decided a preemptive strike to spin it his way. Good strategy if you know it's coming in. But the premise of the appeal here is that this was excludable and it was clearly excludable. If that's the case and you think it hurts you, the premise isn't to let it in and preempt it. I mean, the strategy is to keep it out. Well, that would be a completely different scenario, Your Honor. No, no, it's the scenario being... I realize I'm asking you to accept the proposition that it should have been excluded, but that is the proposition upon which this appeal is predicated. So if you accept that proposition, I want to see if that would resolve the Strickland issue. In other words, so you need to fight that proposition, not fight the Strickland issue. Well, it's sort of a... I can't accept that proposition because there's certainly nothing to support that these statements... Well, if I can just go back for just a quick second, I'm not exactly sure what statements it is that aren't coming in. I mean, there are really no statements in those medical records from the petitioner. It's primarily observations from mental health professionals. So even to get to a point where there might be something that would come out even under your situation, we're not even close to that. So it's sort of hard to get to that hypothetical, but I suppose if there was Supreme Court precedent that addresses this very exact situation, then it would certainly be a harder battle to get over the ineffective assistance of counsel claim. But again, it still could have been counsel's strategy to address this issue head on, and that he was raising this insanity defense, and he wanted those records there, and he was going to address them... And my question is why. Why would that be a rational strategy if they were excludable? Well, I think it's a rational strategy, Your Honor, because as you go through the case, there's a couple of issues that were going on. I think, first of all, he was trying to be open and frank with this jury, because there was this other issue that was addressed in the SJC and in the district court that isn't really clear here, was that to counter his insanity defense, the Commonwealth was going to argue that it was a concocted defense. And so had those statements been kept out, or had they been redacted out of the records? No, we're talking about keeping out, right? Correct. But had they been kept out... Which the jury wouldn't know. Well, I don't know that you would keep all of it out, Your Honor, because again, if you're putting forward an insanity defense, these are records that every single expert in this case reviewed. So if you're just taking out his statements, which I believe is the argument, the rest of the records come in. The fact that he was submitted to a Section 18 review all comes in. The doctor that evaluated him testified. So I don't know that the records in their entirety would be even under that proposition. So if it's just the statements, which is what the petitioner is arguing, that's what would happen. I also do want to point out that he... He also had requested a corrective instruction that if it needed to be given, especially on the cross-examination when these records came in, that had been agreed upon. And finally, in his closing argument, he specifically points out, when he's talking about this issue, that the mental health professionals were looking at something different than what the jury would be looking at. Which is important, because that's essentially what the Commonwealth has been arguing in this case, is saying, you know, yes, he was being questioned while he was in the hospital, but those mental health professionals were not interrogating him. They weren't looking for incriminating statements. They were trying to determine whether or not he needed to be hospitalized further, because he had expressed suicidal thoughts earlier. It's a very different form of questioning, and I think even objectively, under the objective standard that the petitioner talks about, even objectively, the licensed social worker and the nurses that are coming in multiple times a day asking him questions, which, A, the questions aren't really reported, and B, neither are any responses. I don't think it's fair to say that those people in particular are going in there and asking questions that they would reasonably believe, or even objectively reasonably believe, is going to elicit an incriminating statement. That's just not the scenario of this case, Your Honor. I think it's just very different. And even if you want to find that the SJC didn't address this, or they got it all wrong, or they misunderstood, there's still no Supreme Court case that addresses this specific issue, and the petitioner can't get over that. Estelle kind of comes closely, but the Supreme Court itself talks about how it's limited to the circumstances of that case, and that he had been undergoing a different evaluation, and then that information was used in a dangerousness hearing later on, and nobody knew what was going on. Even Edwards, Edwards again is law enforcement post-arrest. The cases that the petitioner cites, he cites four or five cases for different examples. All of those involve law enforcement. All of those primarily are pre-arraignment. Most of them would take place either in the police car or in the police station, so even the context is very different. And so I think, you know, where you have to really look, then, are to Buchanan and Schieber and Byers, in which they talk about the exception under Estelle is when somebody does raise the insanity defense. And then this type of information becomes relevant and admissible. So I think with all of that, Your Honor, whether you review it under the Ed Poddeference or whether you review it de novo, this case should be affirmed. Thank you. Thank you.